FILED

2017 Jul-20  AM 08:55
U.S. DISTRICT COURT
N.D. OF ALABAMA



# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| REGINA BURNS WAGNER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 2:16-cv-720-TMP |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## **MEMORANDUM OPINION**

### **Introduction**

The plaintiff, Regina Burns Wagner, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for a period of disability and disability insurance benefits ("DIB").  Ms. Wagner timely pursued and exhausted her administrative remedies, and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).  The parties have consented to the full dispositive jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 626(c).

Ms. Wagner was 54 years old at the time of the Administrative Law Judge's ("ALJ") decision, and she has a master's degree in education.  (Tr. at 398).  Her past work experiences include teaching elementary school and being a reading coach for other teachers.  (Tr. at 63, 398).   Ms. Wagner claims that she became disabled on November 15, 2012, due to depression, anxiety, and migraine headaches.  (Tr. at 187).  The medical evidence submitted to the ALJ indicates that Ms. Wagner has migraines, obesity, degenerative disc disease, depression, and anxiety.  (Tr. at 17, and exhibits attached).

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001).  The first step requires a determination of whether the claimant is "doing substantial gainful activity."  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  If she is, the claimant is not disabled and the evaluation stops.  *Id*.  If she is not, the Commissioner next considers the effect of all of the claimant's physical and mental impairments combined.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  These impairments must be severe and must meet the durational requirements before a claimant will be found to be disabled.  *Id*.  The decision depends upon the medical

evidence in the record.   *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971).   If the claimant's impairments are not severe, the analysis stops.   20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).   Otherwise, the analysis continues to step three, which is a determination of whether the claimant's impairments meet or equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).   If the claimant's impairments fall within this category, she will be found disabled without further consideration.   *Id.* If they do not, a determination of the claimant's residual functional capacity ("RFC") will be made, and the analysis proceeds to the fourth step.   20 C.F.R. §§ 404.1520(e), 416.920(e).   Residual functional capacity is an assessment, based on all relevant evidence, of a claimant's remaining ability to do work despite her impairments.   20 C.F.R. § 404.1545(a).

The fourth step in the analysis requires a determination of whether the claimant's impairments prevent her from returning to past relevant work.   20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).   If the claimant can still do his or her past relevant work, the claimant is not disabled and the evaluation stops.   *Id.*   If the claimant cannot do past relevant work, then the analysis proceeds to the fifth step. *Id.*   Step five requires the court to consider the claimant's RFC, as well as the

claimant's age, education, and past work experience, in order to determine if she can do other work.   20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).   If the claimant can do other work, the claimant is not disabled.   *Id.*   The burden of demonstrating that other jobs exist which the claimant can perform is on the Commissioner, but once that burden is met, the claimant must prove her inability to perform those jobs in order to be found to be disabled.   *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999).

Applying the sequential evaluation process, the ALJ found that Ms. Wagner has not been under a disability within the meaning of the Social Security Act from the date of onset through the date of her decision. (Tr. at 32).   She first determined that Ms. Wagner meets the insured status requirements of the Social Security Act through December 31, 2016.   (Tr. at 17).   She next found that the plaintiff has not engaged in substantial gainful activity since November 15, 2012, the alleged onset date.   *Id.*   According to the ALJ, the plaintiff's migraines; obesity; broad-based disc protrusion at L4-L5; thoracic radiculitis with disc protrusion at T11-T12; restless leg syndrome; and recurring major depressive disorder, moderate, with anxious features, are considered "severe" based on the requirements set forth in the regulations.   *Id*.   She further determined that Ms. Wagner had nonsevere

impairments of a fracture of a foot bone; anemia; bilateral arm impairments; vitamin D and B deficiencies; vertigo; and bowel incontinence.   However, she found that these impairments neither meet nor medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.   (Tr. at 19).   The ALJ determined that Ms. Wagner's statements concerning the intensity, persistence, and limiting effects of her symptoms were "not entirely credible."   (Tr. at 24).

The ALJ determined that the claimant has the following residual functional capacity: to perform medium work except that she can work in an environment with only a "moderate noise intensity level" or quieter; she is able to work in settings with illumination similar to that found in a typical office but is unable to work in sustained direct sunlight; she can work in an environment that does not involve concentrated exposure to fumes, odors, dusts, gases, poor ventilation or vibration; cannot work at unprotected heights or with hazardous machinery; must have access to a nearby restroom and must have the option to take restroom breaks at her own discretion; is able to understand, remember, and carry out simple, repetitive, and routine tasks and is able to maintain attention and concentration for two hours at a time; is able to work in an environment that does not have stringent production or speed requirements; and is off task 10 percent of the day.   (Tr. at 22-23).

Moving on to the fourth step of the analysis, the ALJ concluded that Ms. Wagner is unable to perform her past relevant work as a teacher.   (Tr. at 31).   The ALJ considered the testimony of a vocational expert ("VE"), and determined that, considering the claimant's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that the plaintiff can perform.   (Tr. at 31).   The ALJ concluded her findings by stating that the plaintiff is not disabled under Section 1520(g) of the Social Security Act.   (Tr. at 32).

## Standard of Review

This court's role in reviewing claims brought under the Social Security Act is a narrow one.   The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied.   *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).   Substantial evidence is "more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."   *Crawford v. Commissioner of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004), quoting *Lewis v. Callahan*, 125 F.3d 1436, 1439-40 (11th Cir. 1997).

The court approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Id.* "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this court finds that the evidence preponderates against the Commissioner's decision, the court must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400. No decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that the Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

**Discussion**

Ms. Wagner alleges that the ALJ's decision should be reversed and remanded for two reasons: (1) the ALJ failed to properly evaluate her complaints of migraines and depression under the Eleventh Circuit Court of Appeals' pain standard, and (2) the ALJ improperly disregarded the opinion of Ms. Wagner's treating physician, Dr. Stacy Siegel, with regard to her depression and anxiety.   (Doc. 13).

A brief discussion of the plaintiff's medical history is necessary in order to put the ALJ's decision into context.   Ms. Wagner has complained that she has had migraine headaches since she was a child.   She went on to become a teacher, and worked at an elementary school until she was age 52.   As a child, she was treated with Tylenol for the headaches.   She sought treatment and began taking prescription medications for her migraines about ten years before her onset date in 2012.   She also has been treated for depression and anxiety since at least 2003 by a psychiatrist, Dr. Stacy Siegel.   Dr. Siegel noted that her recurring major depressive disorder was mild in 2004, but moderate in 2005, and moderate or severe later in 2005. Dr. Siegel's notes from 2012 frequently report Ms. Wagner's depression as moderate to severe, and note that the depression is accompanied by migraines, occasionally mentioning that Ms. Wagner missed up to a week of work because of a migraine.

(Tr. at 317).   In 2013, when treated at Helena Family Medicine, it was noted that she was "still getting 3-4 HA/wk [headaches per week]."   (Tr. at 432).   In December of 2013, the records showed that her headaches were "not as severe" but that the frequency was "still daily."

The plaintiff's migraines occasionally lasted for days, and she went to the emergency room for treatment of her migraine headache if it did not dissipate after about three days.[1]   In 2011, she reported to St. Vincent's Hospital Emergency Department for treatment of a migraine that had failed to respond to her medication on four separate occasions: March 9, April 20, November 3, and November 4.   In 2012, she went to the emergency room for treatment of her migraines on September 12, October 27, and December 21.   (Tr. at 330-35).   In October of 2013, Dr. Counce's notes indicate that Ms. Wagner had mild headaches at least fifteen days per month, and severe headaches one to five days per month.   (Tr. at 495).   Dr. Counce also recorded that Ms. Wagner had missed 30 days of work in the past three months because of her headaches.     (Tr. at 497).

---

[1]   Ms. Wagner testified that she did not consider a headache to be "severe" unless she had to go to the emergency room for treatment.   It is clear from the medical records that her treating doctors considered headaches to be severe even on occasions that did not require emergency treatment.

Dr. Siegel completed a Report of Disability on February 4, 2014, in which she stated that "[patient] remains clinically depressed despite optimization of medication, continues to work with Dr. Counce to control migraine headaches. [Patient] has migraine 2-3 x a week and severe migraines at least once a month. [Patient] is easily anxious with minimal stress and has impaired ability to handle or limit stress/anxiety, which contribute to her depression."  (Tr. at 603).  Dr. Siegel concluded that the plaintiff "is unable to work in any capacity due to severity and chronicity of her depression and anxiety, as well as frequency of her migraines," and further noted that "her symptoms would impair her performance and her ability to attend work."  (Tr. at 604).  In the medical records submitted, there is no suggestion that any doctor suspected that Ms. Wagner was malingering, drug seeking, or exaggerating her pain or her limitations.

As a requirement for seeking Social Security disability benefits, Ms. Wagner had to complete a daily-living function report.  Her average day was described as going to bed about 10:30 or 11 p.m., waking at 2 a.m. and eating breakfast and watching TV, but then returning to bed about 6 a.m. and sleeping until 8 a.m.  She then showers and has a sandwich or soup for lunch.  After lunch she naps until about 4 p.m., then eats dinner and watches TV.  She lives with her fiancé, and takes

care of an indoor cat.   Her fiancé does most of the housework, and a yard service does the yard work.   She shops and drives two or three times a week, and is able to handle her finances.  (Tr. at 186-190).   She talks on the phone with her parents frequently, and enjoys reading, using the computer and Facebook, watching TV, playing with her granddaughter, and collecting antiques.   A report filled out by her fiancé is essentially consistent with hers and notes that he helps her take care of the house and with shopping.   It contradicts her only in that he indicates she almost never leaves the house and does not like to be around other people.   (Tr. at 206-13). At the hearing, Ms. Wagner testified that she quit working after her migraines became more frequent and more severe; that she has still has three or four headaches a week, and that they can last two or three days.  (Tr. at 56).   When she was teaching, she testified that she had to miss work and hire a substitute "probably once every two weeks."   (Tr. at 57).

### 1.   *Proper Legal Standard Regarding Pain*

Subjective testimony of pain and other symptoms may establish the presence of a disabling impairment if it is supported by medical evidence.   *See Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995).   To establish disability based upon pain and other subjective symptoms, "[t]he pain standard requires (1) evidence of an

underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain."  *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)); *see also Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986).

The ALJ is permitted to discredit the claimant's subjective testimony of pain and other symptoms if she articulates explicit and adequate reasons for doing so. *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002); *see also* Soc. Sec. Rul. 96-7p, 1996 WL 374186 (1996) ("[T]he adjudicator must carefully consider the individual's statements about symptoms with the rest of the relevant evidence in the case record in reaching a conclusion about the credibility of the individual's statements."). Although the Eleventh Circuit does not require explicit findings as to credibility, "'the implication must be obvious to the reviewing court.'"  *Dyer*, 395 F.3d at 1210 (quoting *Foote*, 67 F.3d at 1562).  "[P]articular phrases or formulations" do not have to be cited in an ALJ's credibility determination, but it cannot be a "broad rejection" which is "not enough to enable [the district court or

this Court] to conclude that [the ALJ] considered her medical condition as a whole."
*Id*. (internal quotations omitted).

The court notes that, after the ALJ's decision in 2014 and the Appeals Council's denial of review in March 2016, the Social Security Administration modified its standards for the assessment of the credibility of claimants with respect to pain and other symptoms.  Effective March 28, 2016, SSR 16-3p, superseded SSR 96-7p, to clarify a two-step process by which the assessment of the credibility of claims of pain is made.   The new standard specifically requires ALJ's to make specific findings with respect to the assessment of credibility.   The new regulation reads in part:

> In evaluating an individual's symptoms, it is not sufficient for our adjudicators to make a single, conclusory statement that "the individual's statements about his or her symptoms have been considered" or that "the statements about the individual's symptoms are (or are not) supported or consistent."   It is also not enough for our adjudicators simply to recite the factors described in the regulations for evaluating symptoms.   The determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms.

SSR 16-3p.

In this case, the ALJ specifically stated that plaintiff's migraine headaches, depression, and anxiety were severe impairments. She further stated that she considered the plaintiff's nonsevere impairments "singly and in combinations" with her severe impairments, and found they were not disabling. The ALJ's decision that the plaintiff was not disabled, however, rested primarily upon a negative assessment of the plaintiff's credibility.

To support her negative credibility assessment, the ALJ first refers to the lack of medical records that show "significant clinical and laboratory abnormalities" relating to migraine headaches. This observation by the ALJ overlooks the established law in this area, which evaluates migraine headaches in the same way courts review Chronic Fatigue Syndrome: as an impairment that is diagnosed by symptoms, not by any x-ray, MRI, blood test, or laboratory result. *See, e.g., Lindsey v. Colvin*, 208 F. Supp. 3d 1239, 1248 (N.D. Ala. 2016) (noting that "'neither the [Social Security Administration] nor the federal courts require that an impairment, including migraines, be proven through objective clinical findings.'" (citations omitted)); *see also Thompson v. Barnhart*, 493 F. Supp. 2d 1206, 1215 (S.D. Ala. 2007). Indeed, the new SSR 16-3p states that the existence of an impairment can be found on the basis of medical "signs," defined by the regulation

as "anatomical, physiological, or psychological abnormalities established by medically acceptable clinical diagnostic techniques that can be observed apart from an individual's symptoms."   SSR 16-3p.   Laboratory tests and other objective tests are helpful, but not necessary.   Drawing a negative inference from the lack of test results showing migraines, therefore, was a legal error.

Moreover, the longitudinal record that shows that Ms. Wagner complained over many years of debilitating migraine headaches, with frequent (1-4 times per week), long-lasting (2-3 days), severe episodes, the most severe of which required emergency room treatment approximately three times per year.   Her doctors regularly prescribed medication for migraine headaches, and often adjusted the types and dosages of her medications.   Even at the time of the ALJ's decision, SSR 96-7p stated that "a longitudinal medical record demonstrating an individual's attempts to seek medical treatment for pain or other symptoms and to follow that treatment once it is prescribed lends support to an individual's allegations of intense or persistent pain...."   SSR 96-7p, 1996 WL 374186 at *7 (superseded by SSR 16-3p, eff. March 28, 2016).   SSR16-3p likewise instructs that, "Persistent attempts to obtain relief of symptoms, such as increasing dosages and changing medications, trying a variety of treatments, referrals to specialists, or changing treatment sources

may be an indication that an individual's symptoms are a source of distress and may show that they are intense and persistent." Clearly the longitudinal history of a claimant's impairment is an important consideration in assessing the credibility of the claimant's evidence.

The ALJ next relied upon more recent medical records, asserting that those records show that, by April 2013, Ms. Wagner was complaining of "headaches but not migraines." (Tr. at 24). However, the record cited—a handwritten doctor's note—is, at best, difficult to decipher. It appears to the court to state that the doctor recorded that Ms. Wagner was "still having HAs, not 'major,'" that the headaches were "still daily" and require plaintiff to lie down with a cold cloth on her head, and that she takes Ultram for "milder HAs." (Tr. at 435). Several months later, Dr. Counce noted that Ms. Wagner's headaches were "not as severe" but "still daily," and that she took medication twice a week for "migraine breakthrough." (Tr. at 554). The record simply does not support the conclusion that the claimant was no longer having migraines.

The ALJ also relied upon reports that the plaintiff made to Dr. Counce for her blanket assessment that the migraines were less frequent and less severe over time. The ALJ failed to note, however, that Dr. Counce recorded that "stress can trigger"

the onset of the headaches, and that in February of 2014 Ms. Wagner had a "severe migraine" approximately "once a week."   (Tr. at 550).   The fact that some of the medications helped ease the severity, that the decrease in stress levels accompanied her resignation from teaching, or that during some months the frequency or severity decreased, does not support the ALJ's broad rejection of plaintiff's credibility concerning the intensity and persistence of her migraines.

The ALJ further concluded that the plaintiff's credibility was negatively affected by her activities of daily living, including her testimony that she traveled to Fairhope, Alabama, or Atlanta, Georgia, a few times each year, which involved riding in a car for about four hours at a time.   While riding in a car for extended periods may be an activity that puts into question a claimant's complaints about an inability to sit for long periods of time, it seems to have little to do with complaints of migraine headaches, depression, and anxiety.   There is no medical evidence suggesting that such car trips are inconsistent with her complaints of migraines.[2] Ms. Wagner never testified that she made these trips on days she was having a severe

---

[2]     SSR 16-3p mandates "Our adjudicators must base their findings solely on the evidence in the case record, including any testimony from the individual or other witnesses at a hearing before an administrative law judge or hearing officer. The subjective statements of the individual and witnesses obtained at a hearing should directly relate to symptoms the individual alleged. Our adjudicators are prohibited from soliciting additional non-medical evidence outside of the record on their own, except as set forth in our regulations and policies."

migraine.   Similarly, while Ms. Wagner reports doing some driving and shopping, talking on the phone daily with her parents, and looking at Facebook on her computer, there is no evidence that she does these things while she is having a migraine headache; to the contrary, she consistently described her activity while she had a severe headache as requiring her to lie down in a cool, dark, quiet room with a cold cloth on her head.   Moreover, it has been settled that "participation in everyday activities of short duration, such as housework or fishing," does not disqualify a claimant from Social Security disability benefits.   *Lewis v. Callahan*, 125 F.3d 1436, 1441 (11th Cir. 1997).   Likewise, SSR 16-3p recognizes that claimants describe their symptoms in different, even inconsistent ways: "[I]nconsistencies in an individual's statements made at varying times does not necessarily mean they are inaccurate.   Symptoms may vary in their intensity, persistence, and functional effects, or may worsen or improve with time.   This may explain why an individual's statements vary when describing the intensity, persistence, or functional effects of symptoms."   Although the ALJ specifically noted that "a vacation and disability are not mutually exclusive," she still used these relatively short car trips as evidence that "her symptoms are not as severe as alleged."   (Tr. at 27).

As another judge within this district has noted, a credibility finding is not supported by substantial evidence where "there is no evidence that suggests [the plaintiff] engaged in the activities cited by the ALJ at a frequency inconsistent with her testimony" regarding the nature and frequency of her migraine headaches. *Roberson v. Colvin*, 6:12-cv-3586-AKK, 2014 WL 3810236, * 5 (July 30, 2014). Riding in a car for three or four hours on six or eight occasions per year is not inconsistent with the plaintiff's testimony that she has two to three migraine headaches per week on the average, and that these are sometimes completely debilitating.   There is no indication that the plaintiff made these trips on days that she had a severe migraine.   In *Roberson*, the medical expert consulted by the ALJ testified that "when you have a migraine headache it really totally incapacitates someone... [b]ut when you don't have a migraine headache then you're okay."   2014 WL 3810236 at * 5.   Where, as here, an ALJ has found that a claimant's migraine headaches are severe, meaning that they significantly limit her ability to do basic work activities, 20 C.F.R. 416.920(c), the ALJ must also "assess properly what those significant limitations were" by weighing "how frequently the... migraine headaches occurred; how severe [she] thought they were; and how long [she] thought they

lasted."   *Reis v. Astrue*, No. 8:11-CV-2027-T-TGW, 2012 WL 3231092 (M.D. Fla. Aug. 6, 2012).

In this case, the medical evidence and the reports of daily activities were not inconsistent with the plaintiff's reports of migraine headaches; furthermore, the ALJ never made any assessment of how frequent, long-lasting, or severe the headaches were.   That is a particularly important consideration in light of the VE's testimony that missing more than one day of work per month would preclude all competitive employment by the claimant.   (Tr. at 70).   In light of that testimony, the ALJ was required to assess whether Ms. Wagner's migraines would cause her to miss more than one day of work each month.   Given Ms. Wagner's testimony that she suffered two to three migraines a week, and given the treating physician's medical assessment that these required "migraine breakthrough" medication, the ALJ's conclusion that Ms. Wagner's migraines did not make her disabled is unsupported by the evidence.

Having considered the ALJ's opinion and all of the evidence presented, the court finds that the ALJ's decision to discredit Ms. Wagner's allegations regarding her pain and her limitations was not based on substantial evidence.   Instead, it is a "broad rejection" that ignores the full context of the plaintiff's testimony and the

medical evidence.   Accordingly, the matter is due to be remanded for further consideration.

2.   *Weight Given to Treating Physician's Opinion*

It is well established under Eleventh Circuit law that the opinions, diagnoses, and medical evidence of the plaintiff's treating physician should be accorded substantial weight unless "good cause" is shown for not doing so.   *Crawford v. Commissioner of Social Security*, 363 F.3d 1155, 1159 (11th Cir. 1997); *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991); *Swindle v. Sullivan*, 914 F.2d 222, 226 n. 3 (11th Cir. 1990); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).   The weight to be afforded a medical opinion regarding the nature and severity of a claimant's impairments depends, among other things, upon the examining and treating relationship the medical source had with the claimant, the evidence the medical source presents to support the opinion, how consistent the opinion is with the record as a whole, and the specialty of the medical source.   *See* 20 C.F.R. §§ 404.1527, 416.927(d).[3]   "Good cause" exists for an ALJ to not give a treating

---

[3]   The regulation set forth in 20 C.F.R. §§ 404.1527(c) notes that a treating doctor's opinion on the "nature and severity" will be given "controlling weight" where it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent" with other medical evidence, and that the longer the treatment relationship has existed, the more weight the opinion is entitled to receive.   Both of these factors weigh heavily in favor of giving Dr. Siegel's opinions "controlling weight."

physician's opinion substantial weight when the "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) . . . was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004) citing *Lewis*, 125 F.3d at 1440; *see also Edwards v. Sullivan*, 937 F.2d 580, 583-84 (11th Cir. 1991) (holding that "good cause" exists where the opinion was contradicted by other notations in the physician's own record).

Opinions such as whether a claimant is disabled, the claimant's residual functional capacity, and the application of vocational factors "are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner;" thus the court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the Commissioner." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The court instead looks to the doctors' evaluations of the claimant's condition and the medical consequences thereof, not their opinions of the legal consequences of his [or her] condition." *Lewis*, 125 F.3d at 1440. *See also* 20 C.F.R. § 404.1527(d)(1) ("A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."). Such statements by a physician are relevant to the ALJ's findings, but they are not

determinative, because it is the ALJ who bears the responsibility of assessing a claimant's residual functional capacity.   *See, e.g.*, 20 C.F.R. § 404.1546(c).   It follows that the opinions of reviewing, non-examining physicians, when contrary to those of examining physicians, are entitled to little weight.   *Lamb v. Bowen*, 847 F.2d 698 (11th Cir. 1988); *Sharfarz v. Bowen*, 825 F.2d 278 (11th Cir. 1987).   The ALJ may ignore the opinion of the treating physician regarding disability only if the opinion is so brief and conclusory that it lacks persuasive weight or is unsupported by any clinical or laboratory findings. *Wheeler v. Heckler*, 784 F.2d 1073 (11th Cir. 1986); *Bloodsworth v. Heckler*, 703 F.2d 1233 (11th Cir. 1983).

In this case, the plaintiff was treated for more than a dozen years for her depression and anxiety by Dr. Siegel, a psychiatrist.   Dr. Siegel saw Ms. Wagner regularly, often twice per month, treating her for anxiety and depression, and regularly noting the plaintiff's severe and frequent migraine headaches.   On November 15, 2012, Ms. Wagner reported that she was "very depressed," "so stressed out," and had been to the emergency room two or three times since the school year started for her migraines.   (Tr. at 295).   At the next session, five days later, Dr. Siegel noted that Ms. Wagner was "unable to work in any capacity."   (Tr. at 294).   In February 2014, Dr. Siegel opined that Ms. Wagner was totally and

permanently disabled due to her chronic depression and anxiety, as well as due to the frequency of her migraines, and that she could not withstand the stress of any employment.   (Tr. at 541, 603-04).   Dr. Siegel further described the anxiety, depression, and headaches as a cycle in which each condition exacerbated the other. Dr. Siegel's specialty is psychiatry, and her opinions were consistent with her own treatment notes, and not inconsistent with the treatment notes from emergency room treatments, Ms. Wagner's neurologist, and her primary care physician.   Even so, the ALJ gave "little weight" to Dr. Siegel's assessment, calling it "conclusory" and "not provided in vocationally relevant terms."   (Tr. at 29).

On the other hand, the ALJ gave "great weight" to the medical opinion provided by a consultative examiner, John Neville, a licensed psychologist who interviewed the plaintiff in March 2013.   She also gave "great weight" to the consultative examiner, Dr. Robert Estock. [4]   A treating physician's opinion, however, is generally entitled to greater weight than a non-treating physician's pursuant to 20 C.F.R. § 404.1527(c)(2).   The ALJ erred in giving the non-treating

---

[4]       The non-treating doctors considered Ms. Wagner's anxiety, depression, and migraine headaches to be severe, but relied heavily upon her capabilities in the realm of taking care of her personal finances and hygiene, her ability to drive and shop and talk on the phone, and her scores on the tests that involve arithmetic (serial 3s) or spelling ("world" backwards).   Neither of these examiners, however, considered Ms. Wagner's capabilities when she was having a migraine headache, and neither discounted her testimony that she had multiple headaches each week.

physician's opinions great weight where the plaintiff's long-time treating psychiatrist provided detailed and clearly contrary evidence.

## Conclusion

Upon review of the administrative record, and considering all of Ms. Wagner's arguments, the undersigned Magistrate Judge finds the Commissioner's decision is not supported by substantial evidence; therefore, the decision is REVERSED and REMANDED.

DATED the 20th day of July, 2017.

_____
T. MICHAEL PUTNAM
UNITED STATES MAGISTRATE JUDGE